The Illinois County Court of Appeals is now in session. I'm going to address the Supreme Court here for our discussion. Oh yeah, they need some new chairs for us. We need to call them. All right, please be seated. All right, you can call the case please. Parsons Labs v. Chicago Police All right, with counsels who are going to argue a matter, would you step forward to the podium just to introduce yourselves for the record? Good morning, Your Honors. Shelley Geisler on behalf of Plaintiff Appellant, Lucy Parsons Labs. Very good. Good morning. Elizabeth Tischer on behalf of the City of Chicago. Very good, thank you. It is normally our habit to allow 15 minutes to each of you for argument. Would you, with some allowances for questions that may be asked, would you care to retain some time for rebuttal? Yes, Your Honors, I could retain three minutes for rebuttal. That would be just fine. And with that, we may begin. You have a seat, and if you're ready to begin, you may. Your Honors, this case concerns Section 11J of FOIA, which requires courts to impose civil penalties when they determine that a public body willfully and intentionally failed to comply with this act or otherwise acted in bad faith. This Court has adopted the Second District's interpretation of that language from Williams v. Prescotto. Plaintiff respectfully contends that Williams v. Prescotto assumes interpretation, and by extension, this Court's adoption of it in Thomas v. County of Cook were wrongly decided. I am happy to answer any questions that Your Honors may have about arguments raised in the briefing. I do have a question. With regards to the oral and the written ruling that was provided by the Circuit Court here, how should we reconcile these different orders, or can we treat them both harmoniously and consider both of them? Is Your Honor referring in terms of the written order to the order on the fees? No, in regards to that there wasn't any willful and rotten conduct here, that there wasn't any bad faith, et cetera. Your Honor, I'm not certain which... In the record, the trial judge makes reference to, after all the testimony and the arguments by counsel, all right, all of them, and then there's a written order. All clear. Thank you, indeed. And then there's a written order that was issued by the trial judge. I think that Your Honor can think of those orders harmoniously because what we are appealing today is the plain language and the interpretation of the plain language of 11J. The court's ruling on the evidence that was heard at the evidentiary hearing, the court determined based on that evidence that there was a willful and intentional violation. But because the court believes that it was bound to this court's adoption of Williams and the requirement that there must also be a dishonest purpose, the court concluded that it wasn't able to impose a civil penalty in this case. If Your Honor's find for us today, if Your Honor's find that Section 11J allows the imposition of a penalty both when there's been a willful and intentional violation or if there's been some other type of bad faith, then that would require remanding and penalties should be decided on that basis. And just kind of touching on the plain language of the statute and kind of our main arguments on appeal today, after briefing concluded in this case, the court issued Tobias v. City of Chicago Mayor's Office and that case interpreted 11J consistent with plaintiff's arguments on appeal. And we believe that the court should follow Tobias over Williams and Thomas because it properly gives meaning to 11J's plain text. Tobias recognizes, as we're also arguing, that a willful and intentional violation of FOIA is sufficient to warrant penalties under Section 11J. And the key portion of the statute that the court should focus on today is the phrase, or otherwise. And each of those words should be given their own independent plain meaning. So the General Assembly's use of or signals that there are two alternative ways the requester may establish a civil penalty claim. That's either by showing that the public body willfully and intentionally violated FOIA or by showing that the public body otherwise acted in bad faith. Counsel, can I just stop you for one second? In reading the judge's ruling and in reading the cases that are cited, I just want to be clear for myself that your position is that if the court finds something that is willful and that it's intentional, that is one of the or otherwise bad faith ways of which you can hold the person who didn't turn over the documents liable. Willful and intentional is bad faith. It's just one of several different kinds of bad faith that the court can find. Yes, that's correct, Your Honor. Willful and intentional would represent one type of bad faith and then there may be other types of bad faith. So that's the General Assembly provided, you know, an opportunity for courts to assess other types of bad faith that may not necessarily I think I'm thinking ahead and so I didn't mean to interrupt you. Oh, that's all right, Your Honor. Certainly. Please interrupt me all you like. In addition to the plain language of or, the question also gives meaning to the plain language of otherwise, which means in a different way or manner. And I think that's what Your Honor's question was getting at. And Tobias recognizes this. Tobias gives meaning both to the disjunctive or and to otherwise and the idea that there are other types of bad faith and willfully and intentionally violating FOIA is sufficient for a court to impose penalties. So here the court held that defendant willfully and intentionally violated FOIA and so under Tobias and a proper interpretation of 11J, penalties were warranted for defendant's willful and intentional violation. And the court, as I said, should follow Tobias and the arguments that we're advancing today over Williams and Thomas for two reasons. First, as Thomas recognized, Williams didn't give meaning to the disjunctive or. That's at paragraph 49 of the Tobias decision. Williams also didn't address the plain meaning of otherwise. Instead, Williams gave separate meaning to the terms it defined willful as deliberately. It defined intentional as by design. And it defined bad faith as a dishonest purpose. And then it concluded that a public body must have acted deliberately by design and with a dishonest purpose in order to obtain the penalties. And Williams' justification for doing this is that it believed that giving a proper meaning to or, defining or to mean alternatives, would render otherwise superfluous. What about their argument that they're proposing that we consider the rule let me that was cited in the Supreme Court case Bittner v. United States? Yes, Your Honor, that is a canon of statutory interpretation that Your Honor has raised. But as we understand that rule in the case that's interpreting it, that's saying that statutes should be construed against the government. So it's talking about criminal statutes and how they should be construed against the government. Here, it's not really applicable because we're talking about a civil statute. We're also talking about something that's supposed to act as a deterrent against public bodies. And so construing that provision against the government seems to suggest that penalties should be imposed, not that they shouldn't be. And there's other examples of civil statutes imposing penalties to deter certain conduct, for example, maybe in a consumer protection context. And so Williams did believe that it would render otherwise superfluous if it was to give meaning to or to take it to mean alternatives. But that ignores the plain meaning of otherwise, which simply means in a different manner than willfully or intentionally failing to comply with the statute. And then in addition to Williams, this court should also depart from Thomas because in that case, the court did not independently interpret the plain text of 11J, but it adopted Williams' interpretation without analysis. Tobias is an unpublished decision. We don't dispute that. But its reasoning is still persuasive on this court. And we think that the court should consider it because it aligns with the arguments that we're making on appeal and because it also gives meaning to or otherwise into the plain text of the statute. And this court is not bound to follow other decisions of other panels and divisions of the same district, as kind of is evidenced by Tobias. Now, in Thomas, the government did cite exceptions with regards to not complying. Was that ever done in this case? Would they ever cite any type of exceptions in terms of, well, we can't because, you know, the testimony was clear that they get all these requests, right? And so they have to go through them. And the ordinance here is not forgiven in terms of you've got to do five days to ask for another extension. So were there any exemptions cited here by the city? There were some exemptions, Your Honor. I believe deliberative process and an attorney-client privilege exemption were both raised, but those were never something that plaintiff challenged. Once plaintiff got the records, that satisfied plaintiff's request, even with the redactions. So redactions were not part of the consideration in terms of penalties. It was only focused on the delay. And specifically the delay that the circuit court focused on in terms of whether or not to impose a penalty was the delay after the public body realized that it hadn't produced the records. So as soon as they realized they hadn't produced the records, they did correct that they put them through the queue to go through the review process. But then there was an additional three to four months after a lawsuit had been filed that we don't exactly know what was happening and nothing came out in the testimony to really explain what was happening. And I believe one of the public body's witnesses did testify that he speculated that perhaps the public body needed some time to consider the application of exemptions, but he did testify that that wouldn't have allowed for them to continue to delay and withhold records, at least all of the records on that basis. And so the circuit court determined that knowing the law, knowing you're in violation of the law, and then not doing anything to rectify that constituted a willful and intentional violation, but didn't award a penalty because there was no testimony or evidence speaking to a dishonest purpose or bad faith as Williams interpreted it. And that would bring me to my second point. If the court agrees with us today and holds that a willful and intentional violation is sufficient to warrant civil penalties, it doesn't need to consider whether a defendant also acted in bad faith or, again, as Williams defines it, with a dishonest purpose. But even if the court declines to depart from Williams and Tobias and Thomas and thinks that some kind of dishonest purpose is required in order to warrant a civil penalty, then the court can still remand the case and order a civil penalty imposed in this case. Because when a public body does something it knows violates FOIA, like defendant did, that does qualify as bad faith under both Tobias and Williams. Tobias interpreted bad faith to include the failure to meet an obligation or a duty, and that's essentially exactly what happened here. Defendant failed to comply with FOIA's deadlines, which, as Your Honor has recognized, are strict. And FOIA also requires a public body to promptly produce records. So defendant clearly failed to meet its statutory duty in this case, and so penalties are warranted under Tobias's definition of bad faith. But it's also bad faith under the prior case, under Williams, which, again, interpreted bad faith as a dishonest purpose. There's nothing more dishonest than knowing that you have violated the law and then still continuing to violate it anyway. And in discussing the case of Rock River Times, Williams acknowledged that knowing you were violating the law and doing it anyway also constitutes one type of bad faith. And so even if the court doesn't disturb the findings of Williams and Thomas, then there was bad faith in this case, and the circuit court erred in that conclusion. Defendant does make various excuses in its brief for why the post-suit delay doesn't qualify as bad faith. It blames the litigation, but it never really explains how that prevented it from actually releasing the records. And also these excuses about the litigation were rejected in Thomas. I'm sorry. Excuse me, Your Honors. Tobias. The public body in that case claims that litigation delayed the release of the records, and the court found that those excuses smack of dishonesty and a lack of due diligence. So as the circuit court held, defendant knew that the statute existed. It knew it had already violated the law, and it knew there was no good reason to continue violating the statute, but it continued to do so anyway. So under Tobias, that is a failure to meet an obligation or duty. And under Williams, that qualifies as a dishonest purpose. Those qualify as bad faith. And so if the court does require requesters to make an additional showing of bad faith, then that was satisfied in this case. When you look at the record, it also appears that there's a lot of confusion, right, in terms of because you have all these layers, right? You have someone reviewing the request, and it goes to the sergeant, and it goes to the law department, et cetera, et cetera. And there seems to be some confusion in there. So I wish to interpret that confusion as being bad faith because they didn't comply. Your Honor, the time frame that the court should consider is the post-suit delay. So once the lawsuit was filed, the public body was on notice that there was a FOIA request that it hadn't responded to. And the FOIA officer testified at the evidentiary hearing that he became aware that there was a FOIA request he didn't respond to in April of 2023. That was, I think, around the time that the lawsuit was filed. And so everything that preceded that, any kind of confusion, I think that the holidays were in there as well. The record shows, and we don't dispute, that it just simply fell through the cracks and was forgotten about. But once the lawsuit was filed, once they were aware that they were in violation of the statute, there was no explanation as to why it took an additional three to four months to produce the records. There was nothing said in the testimony that really justified that type of delay, especially when the FOIA statute requires records to be released in ten days at most. And the General Assembly did create these strict deadlines in the statute, and those are to be complied with. And I think one more point on that, just that I would like to make, Your Honors, is that any kind of review process that a public body independently decides to impose in order to comply with FOIA requests, that's something that the public body is doing of its own volition. We're not necessarily saying that policies of review or methods for review are in bad faith, but if the public body is going to impose these extra levels of review, especially if treating requesters differently than other requesters, then the public body needs to know we need to get through this within the deadlines. We need to do this promptly. Or ask for an extension that's agreed upon. Exactly, Your Honor, yes. And Section 3E of FOIA provides for public bodies and requesters to agree to other sorts of extensions beyond ten business days. So there could be available to public bodies longer extensions. And requesters may be happy to comply with those as well, because what requesters ultimately want, what the ultimate relief in these sorts of cases, is the records themselves. They just want the production of the records. And so delaying that production for months, even once the public body is on notice of a lawsuit without explanation, that's unacceptable under the plain text of FOIA, and it constitutes a willful and intentional violation, and certainly also a dishonest purpose under Williams. I think that I've reached the end of my arguments for the time being, unless Your Honors have further questions. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court. The Circuit Court's ruling that plaintiff is not entitled to civil penalties is sound. Section 11J of FOIA authorizes the Circuit Court to award civil penalties if it determines that the public body willfully and intentionally failed to comply with the act or otherwise acted in bad faith. As the Circuit Court found, the record is devoid of any evidence of bad faith on the part of the city, and the judgment should be affirmed. Well, dishonest purpose as opposed to bad faith. Yes, yes. And then Thomas, the Court, did clarify that bad faith is the equivalent of dishonest purpose. And so this morning I first explained that an award of civil penalties under Section 11J requires a showing of bad faith. I will then explain that the Circuit Court's finding that the city did not act in bad faith is not against the manifest weight of the evidence. So turning first to the statutory language, this Court previously held in Thomas v. County of Cook that an award of civil penalties is warranted only upon a showing of bad faith, which means a lack of honesty. The plain language of Section 11J supports this reading. Again, 11J authorizes civil penalties only where the public body willfully and intentionally failed to comply with the act or otherwise acted in bad faith. But in Thomas, the facts are different from this case. In Thomas, the agency sought to get an opinion from the Attorney General. They sought to get advice from counsel. Here it doesn't appear like any of that was ever done. You know, they asked about the confusion, and that was part of it. No one knew what the left hand did, no one knew what the right hand was doing. And they just let it lapse. They just let it go and not pay any attention to it until the lawsuit is filed. So, Your Honor, I just want to clarify, too, that in Thomas, we were not citing Thomas for its discussion of whether the facts in that case rose to the level of bad faith. So we're citing Thomas for the point that bad faith, showing of bad faith, is required. Didn't that court look at that? Didn't they look at what was happening in the case before they determined whether or not there was bad faith or not? In Thomas, Your Honor, the court did hold that there was no evidence in the record of bad faith. And so Thomas also clarifies that it's the obligation of the public body to put some evidence in the record of bad faith. It's not that we're looking to see if the city had a good or the public body had a good faith explanation for the delay, but whether the plaintiff can come forward with some evidence of bad faith. And the statute makes that clear as well. Section 11J authorizes civil penalties only where the court can determine that there was bad faith. So there has to be some bad faith in the record. And in Thomas, you know, the court said there was just no evidence of that in the record. And so here we – I'm sorry, Your Honor, go ahead. No, the only other thing I was going to add is that, you know, in her oral ruling, the trial court appeared to be saying that there was bad faith, that there was a lack of compliance that was maybe willful and intentional in terms of the city meeting the request. So the court, in its ruling, it did use the terms willful and intentional. It held that – or it sort of concluded that CPD's violation was willful and intentional. But it made clear in its ruling that it was reading the terms willful and intentional just to mean that the city or that CPD knew that it was not complying with FOIA because once the lawsuit was filed, there had been that three-to-four-month delay. But the court separately looked at bad faith and held that because there was no – or found that because there was no evidence in the record that there had been any dishonest conduct on the part of CPD, that it didn't satisfy the requirements of 11J. And so what we're – what our argument is here is that we have to look at the plain language of 11J and the only reading of the plain language – only reading of 11J that's faithful to the plain language is a requirement that bad faith be proven in every circumstance. How do you reconcile that with the word or, the conjunctive or? And the other way. Right. It says or. So your statement, how do you reconcile that rather than and, it's or otherwise? Correct, Your Honor. So as plaintiff concedes, the word otherwise means in different circumstances. And so, of course, applying that meaning here, a willful and intentional violation of the act is one form of bad faith. And, of course, there may be other forms of bad faith that arise under different circumstances. But either way, bad faith is always required. And the reason is because – Let me stop you there, Chris. I think you're confusing me. Did you just say that willful and intentional are or can be indications of bad faith? They are one of the bad – they are bad faith. You don't have to have the dishonest purpose. You do, Your Honor, because the term willful, and as plaintiff has pointed out, the term willful has a lot of different meanings in different contexts. And so there may be some contexts where willful might have a meaning that's a little more akin to intentional. There are other times when willful can rise to the level of something that's malicious. So we have to choose or apply a definition of willful that gives effect to all of the terms in the statute. And as we explained in our brief, as Black's Law Dictionaries pointed out, willful is traditionally a stronger term than intentional, and it often has some bad faith quality to it. So we have to apply a definition that encompasses bad faith. Otherwise, bad faith would be read completely out of the statute, and the terms willful and intentional would be superfluous because they would essentially have the same meaning. What plaintiff is arguing for here is that willful and intentional essentially mean the same thing. No, I don't think so. They're arguing that willful and intentional, if the court finds something is willful and intentional, then that is an indication, or they can find with that that there is bad faith. They don't have to go and say additionally there is a dishonest purpose. Well, the word willful, so it is true that what we're saying is willful and intentional is a form of bad faith, but that doesn't get the plaintiff around having to provide some evidence of bad faith. If willful and intentional mean bad faith, then there has to be some bad faith in the record to support that it was a willful and intentional violation. If not, that term bad faith, which means dishonesty, would be read out of the statute. But it's in the record. I mean, even in your own brief, you say the landscape changes, right, when a request is made and then there's a lawsuit filed. But yet at the same time, when you look at the statute, litigation is not an exemption to compliance with the request for FOIA. So you are normally saying, yeah, they filed the lawsuit. We're not going to give them what they're asking for, even though it's against the law. So how do you explain that? Well, Your Honor, as the circuit court noted, there might be a circumstance where the public body knows that it's not complying with FOIA. And this is one of those circumstances where, you know, nobody's arguing that that inadvertence up until the point of the lawsuit, that there was any bad faith in that. Once the FOIA officer realized its mistake, that he didn't send a proposed response, he was made aware of the mistake, reached out to discuss the lawsuit. At that point, the FOIA officer did send the records and proposed responses up the chain of review. The parties eventually entered into an agreed order to produce the records and the city did produce them. And that's what we have in the record at this point. We don't have any evidence that the city was refusing to cooperate, had been dishonest in any way. And that's really what the circuit court focuses on here. There has to be something more than just a plain failure to comply with the statute. And for a couple of reasons, one being that that's just not what dishonesty embodies. So it's simply not bad faith just to not comply with the statute. Because there could be many reasons why a public body does not comply with the statute. And those are some of the reasons why the landscape changes. Well, Your Honor, Plaintiff has argued that once the lawsuit was filed, that because the city didn't turn the documents over immediately at that point, that that was inherently bad faith. But what we've said is that, or what our argument in our brief is that once the lawsuit was filed, the parties were acting through their attorneys. The city had, I'm sorry, CPD was, it simply wasn't bad faith for CPD to work with its attorney. It had the ability to raise certain affirmative defenses based on the exemptions that it was reviewing. It was, you know, in the process of reviewing these records for potential redactions under, you know, the privilege, a privileged deliberative process. And so as Green makes clear, the city, once a lawsuit is filed, even if there's nothing preventing it from releasing records, a public body is entitled to raise affirmative defenses, exemptions, and go through the paces of the lawsuit. Unless there's some evidence in the record where, you know, the public body was sort of resisting somehow producing the records or was refusing to cooperate other than just sort of the normal landscape of lawsuits can sometimes take a while. And Tobias doesn't, contrary to Plaintiff's position, Tobias does not hold that a lawsuit can never serve as some, serve a purpose for delay. Tobias, I want to highlight a few points about Tobias. So in that case, well, the city made several comments about how it interpreted the Section 11J, how it interpreted the meaning of bad faith. It ended up ultimately remanding for an evidentiary hearing to find out the reason behind the city's delay in that case. So Tobias does not support the Plaintiff's reading that any sort of delay, any sort of failure to comply with the statute is inherently a bad faith because there's no dispute in that case that the city had failed to comply with its statutory duty. But yet the city, the court still remanded for an evidentiary hearing because there wasn't that evidence in the record that it could look to. There hadn't been any evidence brought forth that this was summary judgment. So you're suggesting that we can remand it if there's nothing in this record that speaks directly to why there was this three-month delay? No, Your Honor. In this case, a remand is not necessary. In Tobias, that was the procedural posture of that case. It was summary judgment. So there had not been any evidentiary hearing, and the court really did not want to proceed to issue a ruling on penalties just based on the summary judgment record without the benefit of the hearing. But in this case, we did have an evidentiary hearing. Plaintiff had an opportunity to bring forth evidence of bad faith, and it simply did not present anything to suggest that in that three- to four-month window of delay during the litigation that CPD was dragging its feet, was refusing to cooperate, had been in any way dishonest. And so remanding at this point, there's really no point because we've already had that evidentiary hearing. And to remand to get more evidence would be placing the burden on CPD to bring forward some evidence to show its good faith. But the case law has been clear and the statutory text is clear that the circuit court has to look for evidence of bad faith, not evidence that the city acted, that the public body acted in good faith. I would also like to just point out that, you know, in Tobias, that was a case where the parties agreed that the parties did not dispute that bad faith was required under the statute. And so they hadn't briefed the issue of bad faith, whether it's required and or what it means in that context. And so the court on its own made some comments about, you know, went into that statutory interpretation and made various comments about what it believed bad faith meant. But the court there didn't have the benefit of the parties, any parties' arguments or briefing on that issue. And I would also just like to point out that it's not, it's an unpublished decision. And because there was no briefing on that, because there had been no argument on that, its reason is just not simply persuasive here. But to the extent this court finds that Tobias has any value, it really does help to show that there has to be some bad faith in the record because the court did remand for an evidentiary hearing to look for bad faith in the record to determine why the city delayed. I also want to point out that the facts of Tobias are a little bit different from here as well. So in that case, the city had not responded, even searched for the records until the litigation had been filed. So this is a little bit of a different circumstance where the city had made an inadvertent mistake that everybody agreed was not bad faith. And as soon as the lawsuit was filed, as soon as the city realized its mistake, it moved towards remedying that with getting the records, you know, going up that chamber of view, finishing that process, reviewing for potential exemptions and redactions, entering into an agreed order. So it's just a very different set of facts than Tobias as well. How do you distinguish this case from Rock River Times? So in Rock River Times, we have a couple of things that are not involved that we don't have here. One, we have a refusal to cooperate on the part of the public body. So in that case, it involved a school and a request for a letter. So the plaintiff, upon not receiving that letter and had sought an opinion from the public access counselor, which reviewed the two exemptions that the school had cited. So the public access counselor found those exemptions faceless and ordered, you know, directed that the letter be released. The public body did not cooperate at that point, did not release the letter, even though it had a ruling on that, and then attempted to raise new exemptions that were also faceless. And then there was also evidence in the record that once the school had eventually come around and decided to release the letter, rather than owning up to its mistake, it had claimed that the public access counselor had issued some oral ruling preventing it from releasing the letter, but there had never been any sort of oral ruling from the public access counselor. So the court found that there had been a refusal to cooperate and some false statements on the part of the school. So in this case, there's no evidence that there was any failure to cooperate during the litigation phase. We don't have anything in the record to suggest that, again, that CPD was dragging its feet, that it was resisting releasing the records, resisting entering into this agreed order. We also don't have any false statements. We do know that CPD, once it realized its mistake of not initially sending the records up the chain of review, it did own up to that mistake. This was not the sort of circumstance where they attempted to say, you know, oh, we never got the request, or, oh, you know, we did send it. It must have gotten lost in the mail. So the city owned up to what it had done. So there were no false statements. There was nothing that suggests any sort of refusal to cooperate. Simply, there was just nothing in the record at all to suggest that CPD had acted in any sort of dishonest manner. And if anything, the record suggests that the city was just doing its best with the large number of FOIA requests that CPD has to contend with at any given time. There's evidence in the record, testimony, that there had been a backlog of requests, that it takes time sometimes to review these documents for adaptions. And as we explained in our brief, this is an issue that the federal courts have looked at quite a bit, this sort of administrative delay when agencies get backlogged with requests and sometimes can't meet their deadlines. And the federal courts have consistently held that that sort of administrative delay does not sound in bad faith unless there's some sort of evidence of a refusal to cooperate. And I just want to go back quickly, Your Honors, to the statutory language again. I just want to emphasize that, again, the term willful must have a different meaning from intentional. Otherwise, those two words will be rendered superfluous. So the only way, under plaintiff's reading, willful is a word that's very similar to intentional. Plaintiffs argue that it means deliberate, that it means with knowledge. Well, those are just other ways of saying intentional. They're all synonymous terms. So our reading is the only one that gives effect to both of those words as having different meanings. Again, willful has a lot of different meanings in different contexts. Sometimes it does mean something more akin to intentional, but sometimes it rises to the level of malicious. So we need to find a meaning here for willful that gives some effect to the two terms as being different terms. It also has to encompass that element of bad faith. So what plaintiff is asking this Court to do is say that a willful and intentional violation is a violation that is done in bad faith without having to prove that anything was done in bad faith. So that simply means that any knowing violation of the act would rise to the level of bad faith, but that's simply not what it means to have a dishonest purpose. That's not, then, the understanding of bad faith in any context. That's not how Thomas v. County of Cook understood bad faith. That's not how the Circuit Court understood bad faith. This Court does not need to revisit the decisions of Thomas v. County of Cook. So is bad faith a catch-all? I mean, if you're not willful and wanton, then maybe you have bad faith? Well, bad faith, there isn't any sort of a catch-all in the sense that there could be other forms of bad faith conduct beyond just a willful and intentional violation of the act. You know, I think the General Assembly was just leaving it open that there could be something else based on the facts. You know, maybe something happened that didn't quite rise to the level of intentional. It was maybe reckless or something. But the important part is that bad faith is in the statute. It's always required. It's just not possible to prove that somebody acted willfully and intentionally without proving that there was some element of bad faith involved, some element of dishonesty. And we simply do not have that in the record here. And if there are no further questions, we ask this Court to affirm the judgment of the Circuit Court. Okay, thank you. Thank you. Thank you.  Your Honors, I just have three brief points on appeal. The parties seem to be in agreement that willful and intentional violation constitutes one type of bad faith. Our reading of the statute wouldn't mean that willful and intentional would mean the same thing, as a defendant suggests. There's no dispute that the Court's interpretation of willful and intentional in Williams was incorrect. No one has appealed that portion of the statute. Williams interpreted willful to mean deliberately, and it interpreted intention to mean by design. And Tobias is consistent with Williams on those points. So his terms are not synonymous. The Court has already interpreted those terms in a way that indicates that they are not synonymous, and they represent one type of bad faith. But — What about counsel's point that Tobias is — it's not written. It's not published, I'm sorry. Yes, Your Honor. We don't dispute that Tobias is an unpublished decision, but under Supreme Court Rule 23E, this Court can still consider decisions that are unpublished if their reasoning is persuasive. We think that the reasoning in Tobias is persuasive here because it gives meaning to the plain language of or otherwise and establishes that there are alternative — two alternative ways that a public body can obtain a civil penalty. My second point just goes to the January 9, 2025, order that Your Honor raised at the beginning of the argument. That order is — the written order is consistent with the Court's oral ruling. The written oral — the written ruling is — I don't think there were actually quotation marks, but it's quoting the language of 11J. And the Court was applying the reasoning in Williams, which said that in order to obtain a civil penalty, public bodies need to show a willful, intentional, and in bad faith violation of the statute. And then finally, I would just like to briefly talk about Rock River Times. That's an older case. It predates Williams. We don't believe that Williams overturned Rock River Times. It never said that it was trying to do that. It just distinguished the facts of Rock River Times from the facts of what was happening in Williams. But what it did find was that what occurred in Rock River Times was a willful and intentional violation. That was the holding of Rock River Times. It found that conduct, knowing that you know the law, knowing that you violated the law, and then doing nothing to rectify that, warrants civil penalties. And that's what occurs in this case as well. And so for all of these reasons, unless Your Honors have any further questions for me, we ask that you reverse the judgment of the circuit court and remand the case. Thank you, Your Honors. Thank you. Thank you. All right. We thank you, Counselors, for an interesting argument. And we will give you a written decision in a reasonable length of time. With that, we will stand adjourned. Thank you so much. All rise.